THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR16-0100-JCC |
| Plaintiff, | ORDER |
| v. | |
| RANDALL FOX, | |
| Defendant. | |

This matter comes before the Court on Defendant's motion for a pretrial ruling on disputed jury instructions (Dkt. No. 249). Having thoroughly considered the parties' briefing and the relevant record, the Court DENIES the motion for the reasons stated herein.

## I. BACKGROUND

Defendant Randall Fox is charged by indictment with conspiracy to violate the Clean Water Act, 33 U.S.C. §§ 1319(c)(A)(2) and 1321(b)(3) ("CWA"), and the Act to Prevent Pollution from Ships, 33 U.S.C. § 1901, *et seq.* ("APPS"), as well as a violation of APPS and its implementing regulations, 33 U.S.C. § 1908(a), 18 U.S.C. § 2, and 33 C.F.R. §§ 151.10(a)–(b), 155.350. (Dkt. No. 4.) Defendant's case was initially adjudicated by the Honorable Robert S. Lasnik, but was reassigned to this Court on February 21, 2018. (Dkt. No. 246.) A jury trial is set for this matter on April 2, 2018, and Defendant has filed this motion to obtain a ruling on the CWA and APPS offense elements that the jury will be instructed on at trial.

### A. Factual Background

This section draws on undisputed facts provided by the parties in prior filings. In 2013, Defendant began working on the *F/V Native Sun* ("*Native Sun*"), a commercial fishing boat owned by his father, Bingham Fox. (Dkt. Nos. 110 at 2, 141 at 1.) Defendant eventually became the captain of the *Native Sun* in June 2013. (Dkt. No. 110 at 2.) During this time, the boat was accumulating enough water in the machinery-space bilges of its engine room that the water needed to be drained while the boat was at sea. (Dkt. Nos. 4 at 5, 141 at 1.) To drain the water, Defendant operated a submersible pump in the *Native Sun's* engine room that discharged the water through a hose and over the side of the boat. (Dkt. No. 141 at 2.) Defendant did not equip this mechanism with any kind of oil separating equipment, bilge monitor, or bilge alarm. (*Id.*)

In late August 2013, the *Native Sun* was on a fishing trip off the coast of Washington. (Dkt. No. 110 at 2.) Anthony Zavala, a crew member on that trip, recorded a video of the hose discharging bilge water from the engine room into the sea. (Dkt. No. 42 at 2.) A copy of the video was eventually provided to the U.S. Coast Guard. (Dkt. No. 110 at 2.) On September 8, 2013, several Coast Guard agents inspected the *Native Sun* while it was docked in Blaine, Washington. (*Id.*) The agents discovered the submersible pump and hoses in the engine room bilges and concluded that the hose had oil in it. (Dkt. Nos. 50 at 2, 110 at 2.)

### B. Procedural Background

On April 4, 2016, Defendant and Bingham Fox were charged for their conduct involving the alleged unlawful discharge of oily mixtures from the *Native Sun*. (Dkt. No. 4.) Both Defendants pled not guilty and the case was set for a jury trial. (Dkt. No. 11.) The parties submitted jury instructions that disputed the elements required to prove both the APPS and CWA offenses.[1] (*Compare* Dkt. Nos. 103 at 48, *with* 105-2 at 2.) For the APPS charge, Defendant argued that the Government must prove that he knew the discharged water contained oil, as

---

[1] The CWA offense elements would be given as part of Defendant's conspiracy charge, as he was not charged with a standalone CWA violation. (Dkt. No. 4.)

defined by the applicable regulations. (Dkt. No. 105-2 at 5.) The Government argued that the Defendant merely had to know that he was discharging "machinery-space bilge water" because such water is an oily mixture, as a matter of law. (Dkt. No. 103 at 48.) As to the CWA charge, the parties disagreed about what elements the Defendant had to have knowledge of to be convicted. (*Compare* Dkt. Nos. 103 at 55, *with* 105-2 at 1.)

At a pretrial conference, Judge Lasnik suggested that he would instruct the jury on the APPS offense in line with the Government's proposed instruction. (Dkt. No. 249 at 4.) Defendant asserts that based on Judge Lasnik's comments, he decided to change his plea and plead guilty as charged. (Dkt. Nos. 137, 141.) Defendant provided a written factual basis that he agreed was sufficient to make him guilty of both crimes. (Dkt. No. 141.)

Bingham Fox proceeded to trial. (Dkt. No. 159.) At the close of evidence, Judge Lasnik provided jury instructions on the APPS and CWA offenses that were similar to those Defendant had proposed prior to pleading guilty.[2] (Dkt. No. 172 at 20, 23.) Bingham Fox was convicted of violating the CWA and acquitted of conspiracy to violate the CWA or APPS. (Dkt. No. 176.) Following trial, Defendant filed a motion to withdraw his guilty plea. (Dkt. No. 190.) He asserted that the factual basis provided with his plea was not sufficient to find him guilty based on the instructions used in his father's trial. (*Id*. at 5–7.)

After hearing argument from both parties, Judge Lasnik granted Defendant's motion to withdraw his guilty plea. (Dkt. Nos. 203, 205.) Judge Lasnik ruled that there were "fair and just" reasons to allow Defendant to withdraw his guilty plea. (Dkt. No. 205 at 6.) The Judge made clear, however, that the jury instructions given in Bingham Fox's trial were not necessarily reflective of the instructions Defendant would receive during his trial. (*Id*. at 4–5.) He also stated, in no uncertain terms, that the Court would not be ruling on jury instructions until trial. (Dkt. No. 252-2 at 21) (Judge Lasnik: "I did want Mr. Fox to realize that he's not likely to get

---

[2] The APPS offense instruction was given as part of the conspiracy charge, as Bingham Fox, unlike Defendant, was not charged with a separate APPS violation. (Dkt. No. 173 at 21.)

1 the same instruction that Bingham Fox did. It is going to be decided on a fact basis at the time of trial. So as long as he goes into that with his eyes wide open.")

With this procedural history in the background, Defendant asks this Court to issue a pretrial ruling regarding the offense elements of the APPS and CWA charges that will be given to the jury at trial. (Dkt. No. 249 at 2–3.) The Government agrees that "a preliminary ruling on the jury instructions . . . would be beneficial to the parties . . . ." (Dkt. No. 252 at 1.)

## II. DISCUSSION

The Court is not obligated to rule on jury instructions prior to trial. *See* Fed. R. Crim. P. 30 ("The Court must inform the parties before closing arguments how it intends to rule on the requested instructions.") The purpose of Rule 30 is "to inform the trial lawyers in a fair way what the instructions are going to be in order to allow counsel the opportunity to argue the case intelligently to the jury." *United States v. Gaskins*, 849 F.2d 454, 458 (9th Cir. 1988) (citation omitted). It is sensible for a court not to issue jury instructions until closing arguments because a judge typically will not be certain what instructions are appropriate until all of the evidence has been presented at trial. *See United States v. Powell*, 955 F.2d 1206, 1210 (9th Cir. 1991) ("A trial court is given substantial latitude in tailoring jury instructions so long as they fairly and adequately cover the issues presented.") (citation omitted).

Judge Lasnik previously informed Defendant that he would not receive a ruling on the jury instructions until trial. When Defendant withdrew his guilty plea, Judge Lasnik stated:

> So I don't know what instruction I'm going to give in a prosecution of Randall Fox, and it's not fair to pin me down on that now. If he wants to withdraw his plea of guilty and go to trial, he's going to go trial, and then we will talk about the instructions at the right moment, just like any other criminal case. You don't get a contract with the judge that says, I promise I will give the same instruction in a completely different case with a completely different fact pattern.

(Dkt. No. 252-2 at 10.) In withdrawing his guilty plea, Defendant acknowledged that he would not receive a preview of the jury instructions prior to trial. (*See id.* at 10–12.)

Given the law and history of this case, the Court declines Defendant's request to make an

advanced ruling on the CWA and APPS jury instructions. First, it is this Court's long-running practice to not issue jury instructions until the close of evidence at trial. Even if the Court made a predictive ruling on the jury instructions it would come with the caveat that final instructions might change based on the evidence presented at trial. While the Court can certainly understand Defendant's desire to limit uncertainty prior to trial, preliminary rulings on jury instructions would not be binding and some uncertainty would remain.

Second, and of particular importance to the Court's decision, Judge Lasnik told Defendant multiple times that the Court would not issue jury instructions until trial. (Dkt. No. 252-2 at 10, 21.) The case was reassigned to this Court; but, that twist of fate does not justify granting a motion that Judge Lasnik explicitly foreclosed. The Court has little doubt that if this case had remained before Judge Lasnik, Defendant's current motion would have been denied for the aforementioned reasons.

Defendant was allowed to withdraw his guilty plea and proceed to trial. That trial is scheduled for April 2, 2018, and the Court will issue jury instructions at that time. Until then, the parties are ORDERED to comply with the case management deadlines established in the Court's prior Minute Order (Dkt. No. 247).

## III. CONCLUSION

For the foregoing reasons, Defendant's motion for a pretrial ruling on disputed jury instructions (Dkt. No. 249) is DENIED.

DATED this 2nd day of March 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE